## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NAKEITH SPARKMAN**                         **CIVIL ACTION**

**VERSUS**                                   **NO. 17-1416**

**DARREL VANNOY, WARDEN**                    **SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.     Factual Background

The petitioner, Nakeith Sparkman ("Sparkman"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.[2] On March 8, 2012, Sparkman was indicted by a Grand Jury in Jefferson Parish for one count of second degree murder, one count of attempted second degree murder, one count of aggravated burglary, and one count for being a felon in

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

possession of a firearm.[3]  One June 28, 2012, an amended bill of indictment also charged Michael

Shelby in count one.[4]  Sparkman and Shelby both entered pleas of not guilty in the case.[5]

The record reflects that, at approximately 8:00 p.m. on November 14, 2011, Shartina

Norman was with her boyfriend, Ranard "Deuce" Brown, Jr.  Brown received a call from Nakeith

Sparkman about purchasing marijuana.[6]  After the phone call, Brown told Norman that they were

going to Algiers to pick up Sparkman.  Sparkman called Brown back and told him not to bring any

guns as there would be a lot of people around when they picked him up.

Brown and Norman located Sparkman standing in the parking lot of the Jackson Landing

apartment complex with five or six other men.  Sparkman got in Brown's vehicle and Brown drove

back to his apartment on Manhattan Boulevard in Harvey to pick up marijuana.  Brown parked on

the backside of the apartment complex, away from his apartment, because he did not want anyone

to know exactly where he lived.  Norman and Sparkman stayed in the vehicle while Brown went

into the apartment to get the marijuana.  Sparkman was acting suspiciously, and Norman suspected

that Sparkman was trying to scout out the exact location of Brown's apartment.

Brown returned to the vehicle carrying a backpack.  After putting the backpack in the trunk

of the vehicle, Brown drove to the "W" Hotel where Sparkman's "friend" was waiting to purchase

the marijuana.  Brown and Sparkman went inside the hotel while Norman remained in the vehicle.

Brown and Sparkman returned about thirty minutes later.  Brown was angry because Sparkman's

"friend" would not complete the deal.  Norman accused Sparkman of setting up Brown, but Brown

---

[3]St. Rec. Vol. 1 of 7, Grand Jury Return, 3/8/12; Bill of Indictment, 3/8/12.

[4]St. Rec. Vol. 1 of 7, Grand Jury Return, 6/28/12; Amended Bill of Indictment, 6/28/12.

[5]St. Rec. Vol. 1 of 7, Minute Entry, 3/9/12.

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Sparkman*, 136 So. 3d 98 (La. App. 5th Cir. 2014); St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 2013-KA-0640, 2/12/14.

refused to believe it.  The three left the hotel and picked up Brown's cousin, Craig Smith.  They then dropped Sparkman off at a gas station on Claiborne Avenue.

After making several stops in Bridge City and Waggaman, Brown, Norman and Smith arrived at Brown's new apartment about 9:00 p.m.  When they exited the vehicle, Norman saw a man pacing back and forth in a lot across from Brown's apartment.  Norman recognized the man as one of the men she saw earlier in the evening standing with Sparkman in Algiers.  The man kept looking at them while he talked on a cell phone.  Norman told Brown that she felt the man was suspicious, but Brown disregarded her concerns.

The three went inside the apartment and watched a movie while Brown and Smith smoked marijuana.  Around midnight, when Brown was hungry, he gave Norman a list of items and she went to Brother's Food Mart for food.  Surveillance footage from the store depicted Norman purchasing items.  The footage also depicted three black men wearing white t-shirts who came in to the store prior to Norman entering.  Shelby, who originally denied being in the area, later identified himself as one of the three men in the surveillance footage.

Upon returning to the apartment complex, Norman noticed someone running away from the door of Brown's apartment.  Norman, who had Brown's cell phone, called Smith and spoke to Brown.  Norman told Brown that, "I think, I don't know if I'm tripping, I think somebody in front the door."  Brown opened the door and Sparkman came toward him with a gun drawn.  Sparkman and Brown struggled over the gun.  As Brown stepped back into the apartment, Sparkman shot Brown in the face.  Brown ultimately died of a gunshot wound to the head.

Smith, who was unable to find a weapon or a way out of the apartment, knelt on the floor and begged Sparkman not to kill him.  Smith raised his hand in defense as Sparkman shot him.  The bullet struck Smith's hand and grazed his scalp.  Smith played "dead" while Sparkman searched the apartment.  Smith heard Sparkman open the oven and the door to the living room

closet.  Sparkman then fled the apartment without taking anything.  Smith locked the door and then ran into the bathroom while Brown tried to crawl out of the room.  Smith called 911 but was unable to provide the address of the apartment.  Smith ultimately left the apartment to search for help.

In the meantime, after witnessing Sparkman shoot Brown, Norman saw the man she had seen earlier, whom she later identified as Shelby, running toward her with a gun drawn.  As Norman fled the apartment complex in Brown's car, she saw a black vehicle following her.

Gerard Palisi, a tenant of the apartment complex, was awakened by the doorbell ringing. He opened the door but did not see anyone.  He then heard a voice call from outside.  As he walked towards the parking lot, he saw Brown lying on the ground and trying to drag himself into his apartment.  He then encountered Smith, who told him he and his friend had been shot and asked Palisi to call 911.  Palisi called 911 and reported that two men had sustained gunshot wounds and described the injuries.  When the operator asked Palisi to ask Smith if he knew who had shot them, Smith responded, "Nakeith."

Deputy Timothy Massenburg of the Jefferson Parish Sheriff's Office ("JPSO") responded to the scene.  Upon arriving, he observed that the front door of the apartment was open and there was blood on the floor in the entryway.  Smith and Brown were lying on the floor in the main room of the apartment.  Smith told the officers what had happened and identified the shooter as "Nakia Magee."  Smith denied that either he or Brown had a gun during the incident.  Smith was later shown a six-person photographic lineup and identified Sparkman as the man that shot him and Brown.

Norman gave statements to a JPSO detective and positively identified Sparkman in a photographic lineup as the shooter.  She also identified Shelby in a photographic lineup as the second man that she saw with a gun.  At trial, Norman testified that neither Brown nor Smith had

a gun, and that she did not remember telling police that Smith had a gun or that there was a gun in the apartment.

Deputy Jamey Perque of the JPSO Crime Scene Division processed the crime scene. He recovered two fired cartridge casings and one spent projectile from the living room of Brown's apartment. Narcotics and narcotics paraphernalia were also recovered, including marijuana, pills and a digital scale. No guns were found in the apartment, however, a gun holster and magazine were found in the living room closet.

Sparkman was arrested and advised of his rights. He gave a statement to Detective Solomon Burke of the JPSO at 4:45 p.m. on November 16, 2011. Sparkman's statement was consistent with those of Smith and Norman up until the time after they dropped him off at the gas station on Claiborne. Sparkman claimed they picked him up later on Earhart Boulevard because they wanted his help in identifying the person lurking outside Brown's apartment.

According to Sparkman, on the drive back to Brown's apartment, Norman accused Sparkman of trying to set up Brown and a verbal argument ensued. When they arrived at the apartment, Norman allegedly left to "get her people" to deal with Sparkman. A physical altercation ensued between Smith, Brown and Sparkman. Sparkman alleged that Smith choked him from behind while Brown pulled a small silver handgun. Brown kicked Sparkman twice, hit him in the stomach, and stomped on his knee. Sparkman grabbed the gun and shot Brown. He then shot Smith before Smith could reach a gun on the kitchen counter. Sparkman claimed he hid the gun in the complex and that he would show the officers where he hid it. Sparkman expressly denied that he was with anyone else at the time of the incident or that he left at any time to go to a grocery store.

At 6:48 p.m. on November 16, 2011, Sparkman gave a second statement with a more accurate timeline. He denied taking anything from the apartment and denied intending to rob

Brown or Smith of money or drugs.  Sparkman claimed that he shot Smith because Smith choked him and he shot Brown because Brown "drew down" on him.

Timothy Guillot, who was serving a 15-year sentence, was incarcerated with Sparkman in November and December of 2011.  During that time, Sparkman spoke to Guillot about the shooting on several occasions.  Sparkman told Guillot that he and two friends were captured on surveillance camera video before the incident.  Sparkman explained that he went to his friend's house and knocked on the door.  When his friend answered the door, Sparkman pushed in the door, struggled with his friend, and then shot him in the head.  Sparkman told Guillot that there was a second man in the apartment who put his hands up, but that Sparkman shot through the man's hand and hit him in the head.  Sparkman also told Guillot that he stole marijuana from the kitchen before fleeing.  Sparkman then went to his girlfriend's residence in Algiers and threw the gun in the river.  On another occasion, Sparkman told Guillot that he went to his girlfriend's house in the Calliope project and sold the gun.

Dr. Marianna Sandomirsky, an expert in the field of forensic pathology, performed the autopsy on Brown.  She recovered a copper-jacketed projectile during the autopsy.  She determined that the cause of Brown's death was a gunshot wound to the head.  She further determined that the wound was a result of a gun fired from a distance of between about two inches and three feet.

Jené Rauch, an expert in the field of ballistics and tool mark examination, determined that the two cartridge casings were fired from the same weapon and the two projectiles were also fired from the same weapon.

Sparkman was a convicted felon, having been convicted of attempted armed robbery in the 24th Judicial District Court in case number 03–6248 on May 25, 2004.

Sparkman and Shelby were tried by a jury on May 7 through May 9, 2013, and Sparkman was found guilty as charged while Shelby was found not guilty.[7]  The Trial Court denied Sparkman's motion for new trial.[8]  On May 22, 2012, the Trial Court sentenced Sparkman to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence as to count one (murder of Brown), forty-five years at hard labor as to count two (attempted murder of Shartina Norman), twenty-five years at hard labor as to count three (aggravated burglary), and twenty years at hard labor as to count four (felon in possession of a firearm), all sentences to be served consecutively.[9]

On direct appeal, Sparkman's appellate counsel asserted three errors[10]: (1) the evidence was insufficient to sustain Sparkman's convictions; (2) the Trial Court erred in denying a mistrial after Norman commented that she had passed a lie detector test; and (3) the Trial Court violated Sparkman's right to a public trial when it ejected almost all spectators from the courtroom. Sparkman filed a pro se brief in which he asserted two errors[11]: (1) the State withheld the results of the polygraph examination in violation of *Brady*;[12] and (2) the State failed to correct Norman's false testimony in violation of *Napue*.[13]  The Louisiana Fifth Circuit affirmed the convictions,

---

[7]St. Rec. Vol. 1 of 7, Trial Minutes, 5/7/13; Trial Minutes 5/8/13; Trial Minutes, 5/9/13; Verdicts, 5/9/13; Trial Transcript, 5/7/13; Trial Transcript, 5/8/13; St. Rec. Vol. 2 of 7, Trial Transcript, 5/8/13 (con't); Trial Transcript, 5/9/13; St. Rec. Vol. 3 of 7, Trial Transcript, 5/9/13 (con't); St. Rec. Vol. 4 of 7, Closing Arguments Transcript, 5/9/13.

[8]St. Rec. Vol. 1 of 7, Motion for New Trial, 5/16/13; Minute Entry, 5/17/03; Hearing Transcript, 5/16/13.

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/22/13; St. Rec. Vol. 3 of 7, Sentencing Transcript, 5/22/13.

[10]St. Rec. Vol. 3 of 7, Appeal Brief, 2013-KA-640, 10/21/13.

[11]St. Rec. Vol. 3 of 7, Pro Se Appellate Brief, 13-KA-640, 12/16/13.

[12]*Brady v. Maryland*, 373 U.S. 83 (1963).

[13]*Napue v. Illinois,* 360 U.S. 264 (1959).

finding no merit in the issues raised, but remanded for resentencing on count three on February 12, 2014.[14]  On December 15, 2014, the Trial Court resentenced Sparkman to twenty-five years as to count three, to run concurrently with the other counts.[15]

On November 26, 2014, the Louisiana Supreme Court denied Sparkman's related writ application without stated reasons.[16]  His conviction was final under federal law ninety (90) days later, on February 24, 2015, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On June 2, 2015, Sparkman submitted pro se to the Trial Court an application for post-conviction relief and brief in which he raised the following grounds for relief[17]: (1) his appellate counsel was ineffective in failing to raise issues relating to a stipulation entered into evidence and trial counsel's ineffective assistance in failing to object to jury selection in violation of *Batson*;[18] (2) ineffective assistance of trial counsel in failing to object to jury selection in violation of *Batson*; (3) he was denied his rights to due process and equal protection when he was arrested in Orleans Parish on a Jefferson Parish warrant in violation of La. Code Crim. P. art. 207; and (4) he was

---

[14]*State v. Sparkman*, 136 So. 3d 98 (La. App. 5th Cir.  2014); St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 13-KA-640, 2/12/14.

[15]St. Rec. Vol. 6 of 7, Re-Sentencing Minutes, 12/15/14; Commitment Order, 12/15/14.

[16]*State v. Sparkman*, 152 So. 3d 897 (La. 2014) (mem.); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2014-KO-0477, 11/26/14); La. S. Ct. Application for Writ, 14 KO 0477, 3/10/14 (dated 3/3/14).

[17]St. Rec. Vol. 6 of 7, Application for Post-Conviction Relief, 6/8/15 (dated 6/2/15).

[18]*Batson v. Kentucky*, 476 U.S. 79 (1986).  In *Batson*, the United States Supreme Court held that peremptory challenges could not be used to exclude jurors solely because of race unless a neutral reason for the peremptory challenge could be shown.

denied due process and equal protection because the prosecution improperly bolstered the credibility of Guillot in violation of *Napue*.

The Trial Court denied the writ application on July 17, 2015, finding Sparkman's claims of ineffective assistance of appellate and trial counsel to be without merit, his claim regarding his arrest to be procedurally barred under La. Code Crim. P. arts. 930.4(B) and 930.3, and his claim related to Guillot's testimony to be legally and factually unsupported.[19]    On July 27, 2015, Sparkman filed a traverse.[20]    On July 28, 2015, the Trial Court found "no basis to set aside or modify its denial of post-conviction relief."[21]    On August 25, 2015, the Louisiana Fifth Circuit denied Sparkman's writ application finding "no error in the trial court's summary disposition of this application for post conviction relief."[22]    Sparkman filed an application for supervisory writs with the Louisiana Supreme Court in September of 2015.[23]    On October 17, 2016, the Louisiana Supreme Court denied writs finding Sparkman failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), his remaining claims as repetitive and/or unsupported under La. Code Crim. P. arts. 930.2 and 930.4, and attached the Trial Court order denying relief.[24]

---

[19]St. Rec. Vol. 6 of 7, Trial Court Order, 7/17/15.

[20]St. Rec. Vol. 6 of 7, Petitioner's Traverse to the State's Response to Post-Conviction Relief, 7/27/15 (dated 7/17/15).

[21]St. Rec. Vol. 6 of 7, Trial Court Order, 7/28/15.

[22]St. Rec. Vol. 6 of 7, 5th Cir. Order, 2015-KH-513, 8/25/15; 5th Cir. Writ Application, 15-KH-513, 8/20/15 (dated 8/13/15).

[23]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 15 KH 1726, 9/22/15 (dated 9/15/15).

[24]*State ex rel. Sparkman v. State*, 202 So. 3d 488 (La. 2016) (per curiam); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2015-KH-1726, 10/17/16.

## II.    Federal Habeas Petition

On February 15, 2017, the clerk of this Court filed Sparkman's petition for federal habeas corpus relief in which he asserts the following grounds for relief[25]: (1) insufficient evidence; (2) the Trial Court erred in denying his motion for mistrial; (3) the Trial Court violated his right to a fair trial when it ejected the spectators from the courtroom; (4) the State violated his right to due process when it failed to turn over *Brady* material; (5) the State allowed Norman to falsely testify in violation of *Napue*; (6) the ineffective assistance of trial and appellate counsel; (7) his rights to due process and equal protection were violated when the police failed to comply with La. Code Crim. P. art. 207; and (8) his rights to a fair trial and due process were violated when the prosecution committed misconduct by bolstering Guillot's testimony.

The State filed a response in opposition to the petition asserting that Sparkman timely filed his federal petition.[26]  The State asserts that four claims are procedurally barred, and the remaining claims can be dismissed as meritless or not cognizable on federal habeas review.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 13, 2017.[28]  The threshold questions on habeas review under the

---

[25]Rec. Doc. No.3, pp. 12-47.

[26]Rec. Doc. No. 16.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149

amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes Sparkman timely filed his federal petition and exhausted his claims. The State contends that four claims are in procedural default and that Sparkman's remaining claims can be dismissed as meritless or not cognizable on federal habeas review.[29]

## IV.   <u>Procedural Default (Claim Nos. 3, 4, 5 and 7)</u>

The State recognizes that four issues raised by Sparkman are in procedural default, having been dismissed by the Louisiana Supreme Court as procedurally barred from review. These claims are the denial of a right to fair trial when the Trial Court ejected spectators from the courtroom, the State's failure to turn over polygraph results in violation of *Brady*, the State's failure to correct Norman's false testimony in violation of *Napue*, and the denial of due process and equal protection in his arrest.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338

---

F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this Court docketed Sparkman's petition on February 15, 2017, and the case later was opened May 1, 2017 when Sparkman paid the filing fee following denial of pauper status. Sparkman certified under penalty of perjury that he placed the original pleadings into the prison mail system on February 13, 2017. Rec. Doc. No. 3, pp. 4, 53. He has declared this to be the date on which he delivered the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Len*sing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

[29]Rec. Doc. No. 16.

& n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Sparkman raised his claims regarding ejecting the spectators, the polygraph examination results, and Norman's testimony on direct appeal. The Louisiana Fifth Circuit found that the issue relating to ejecting the spectators from the courtroom was not preserved for review because there was no objection pursuant to La. Code Crim. P. art. 841(A). The Louisiana Fifth Circuit similarly found that the other two claims were not preserved because petitioner did not raise the issues at the trial court level. The state appellate court's finding of procedural default prevails over the alternative discussion of the merits of the claim. *See Robinson v. Louisiana*, No. 13–30016, 2015 WL 1323334, at *4 (5th Cir. Mar. 25, 2015) (*citing Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)). The Louisiana Supreme Court denied writs without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Sparkman raised his claim related to his arrest for the first time in his petitioner for post-conviction relief. The Trial Court found the claim to be procedurally barred under La. Code Crim.

P. art. 930.4(B). The Fifth Circuit found no error in the ruling. The Louisiana Supreme Court found Sparkman's claim was "repetitive" under La. Code Crim. P. art 930.4.

The word "repetitive" is a reference to language in La. Code Crim. P. art. 930.4 which addresses the grounds for dismissal of post-conviction applications in Louisiana. While the Louisiana Supreme Court did not refer to a specific paragraph of art. 930.4, it adopted the Trial Court's written reasons for denying the application for post-conviction relief. The Trial Court specially referred to art. 930.4(B) in finding Sparkman's arrest claim procedurally barred. Art. 930.4(B) provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."

The Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of Sparkman's claims of denial of a right to fair trial when the Trial Court ejected spectators from the courtroom, the State's failure to turn over polygraph results in violation of *Brady*, the State's failure to correct Norman's false testimony in violation of *Napue*, and denial of due process and equal protection in his arrest on federal habeas corpus review. As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

## A.    Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338 (citation omitted).

In this case, state courts relied upon La. Code Crim. P. art. 841(A) to support its finding that Sparkman's claim related to the ejection of spectators from the courtroom was not preserved for appellate review because he failed to lodge the required contemporaneous objections at trial or before. The state courts further found that Sparkman's *Brady* and *Napue* claims as they relate to

Norman's testimony were not preserved because he failed to raise the issues at the trial court level. Under La. Code Crim. P. art. 841(A) "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review. These rulings were therefore independent of federal law and relied strictly on state procedural requirements. *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (Art. 930.4); *Thomas v. Cain*, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (same); *Washington v. Cain*, No. 98–0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Duplantier, J.) (same).

### B.    Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 316-17 (2011); *Glover*, 128 F.3d at 902. A state procedural rule, however, "can be 'firmly established' and 'regularly followed,'– even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 558 U.S. at 60-61.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAfee v.*

*Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner

may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th

Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill.

July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the

record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No.

00CV684–Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*,

No. 99–0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (finding La. Code

Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the

circumstances of the case); *Poree v. Cain*, No. 97–1546, 1999 WL 518843, at *4 (E.D. La. July

20, 1999) (Mentz, J.) (finding art. 930.8 was not adequate to bar review because it was misapplied).

It is not, however, within the federal court's province to disagree with the application of the bar;

it is only to determine its adequacy. *Lee v. Cain*, No. 03–2626, 2004 WL 2984274, at *1 n.2 (E.D.

La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3 as applied to ineffective

assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in the

case of this issue, the bar must stand.

### 1.    *La. Code Crim. P. art. 841*

The failure to preserve a claim under La. Code Crim. P. art. 841 has been repeatedly

recognized as an adequate state ground which bars review by the federal courts in a habeas corpus

proceeding. *See Toney v. Cain*, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994)

(Table, Text in Westlaw); *Proctor v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *Marshall v. Cain*, No. 04-219, 2006 WL 2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation); *accord Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright*, 433 U.S. 72, 87-88 (1977) (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims)). The procedural bar under La. Code Crim. P. art. 841 is adequate to bar federal habeas review of Sparkman's third, fourth, and fifth claims.

### 2.    *La. Code Crim. P. art. 930.4*

As noted above, the Louisiana Supreme Court barred Sparkman's arrest claim (claim 7) pursuant to La. Code Crim. P. art. 930.4. The record supports the imposition of this procedural bar. Sparkman does not and cannot contest that this barred claim was not presented in earlier proceedings when it could have been.

The federal courts have held that the bars imposed under Article 930.4(B) are adequate to foreclose federal review of a claim barred thereunder by the state courts. *Cf. Thomas*, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.)(finding Article 930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain*, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds*, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

For the foregoing reasons, the procedural bars imposed on Sparkman's arguments regarding the denial of a fair trial when the Trial Court ejected spectators from the courtroom

(claim 3), *Brady* and *Napue* (claims 4 and 5), and the denial of due process and equal protection as a result of his arrest (claim 7) are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana Supreme Court's decisions rested on independent and adequate state rules of procedural default, this Court will not review these claims unless Sparkman has established one of the following exceptions.

### C.    Cause and Prejudice

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262); *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Sparkman has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. The Court's review of the record does not support a finding that any factor external to the defense prevented Sparkman from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for

his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

Sparkman's defaulted arguments are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[30]

### D.   Fundamental Miscarriage of Justice

Sparkman may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, Sparkman must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray,* 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, Petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

---

[30]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte*. *Id.*

Sparkman presents no argument and the record contains nothing to establish his actual innocence on the underlying convictions. For these reasons, he has failed to overcome the procedural bar to his claims, and his third, fourth, fifth and seventh claims must be dismissed with prejudice as procedurally barred.

## V.    **Standards for a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-

07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d

230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).  In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    <u>Sufficiency of the Evidence (Claim No. 1)</u>

Sparkman contends that the evidence was insufficient to convict him of second degree murder, attempted second degree murder, aggravated burglary, and felon in possession of a firearm.  He argues that that the State failed to rebut the evidence that Sparkman acted in self-defense when he shot Brown and Smith.  He further claims that the State failed to prove beyond a reasonable doubt that he committed an aggravated burglary or that he possessed a firearm.  Sparkman asserts that the testimony of Norman, Smith, and Guillot was not credible.  The State argues that the evidence that was presented at trial was sufficient to establish each element of the crimes charged and denial of relief by the state courts was proper under federal law.

Sparkman, through counsel, first challenged the sufficiency of the evidence in a motion for new trial before his sentencing.  The Trial Court denied the motion.  Sparkman's counsel raised the sufficiency of the evidence on direct appeal to the Louisiana Fifth Circuit.  Relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state law, the Court resolved that the evidence was sufficient to convict Sparkman under the specific intent theory of second degree murder as well as attempted second degree murder.  The Louisiana Fifth Circuit found that Sparkman's argument related to self-defense went to credibility which was exclusively a jury decision and that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to establish that

the defendant was guilty of the offenses charged. This was the last reasoned opinion on the issue because the Louisiana Supreme Court denied relief without stated reasons. *See Ylst*, 501 U.S. at 802.

Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings, unless the decision was contrary to, or involved an unreasonable application of, Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard. Instead, it must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent Sparkman relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test…Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997).

The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So. 2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Sparkman was charged with and convicted of second degree murder, attempted second degree murder, aggravated burglary, and felon in possession of a firearm. Second degree murder is defined in relevant part by Louisiana law as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, second degree robbery, simple robbery ... even though he has no intent to kill or to inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So. 2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So. 2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So. 2d 714, 717 (La.1987)). Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or a gun. *State v. Collins*, 43 So. 3d 244, 251 (La. App. 1st Cir. 2010) (citing *State v. Brunet*, 674 So.2d 344, 349 (1996)).

Under Louisiana Revised Statute 14:27(A), a person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object." Louisiana law provides that specific intent to inflict great bodily harm is not alone enough to support a conviction for attempted second degree murder; rather, attempted murder requires the specific intent to kill. *State v. Butler*, 322 So. 2d 189, 193 (La. 1975); *State v. Andrews*, 665 So. 2d 454, 456 (La. App. 5th Cir. 1995); *State v. Collins*, 43 So. 3d 244, 251 (La. App. 1st Cir. 2010) ("To be guilty of attempted second degree murder, a defendant must have the specific intent to kill and not merely the specific intent to inflict great bodily harm."). Under Louisiana law, deliberately pointing and firing a deadly weapon at close range are

circumstances that will support a finding of a specific intent to kill. *State v. Broaden*, 780 So. 2d 349, 362 (La. 2001); *State v. Tassin*, 536 So. 2d 402, 411 (La. 1988); *see also State v. Dubroc*, 755 So. 2d 297, 303–304 (La. App. 3rd Cir.1999).

Louisiana law defines aggravated burglary in La. Rev. Stat. § 14:60, in pertinent part, as follows:

> [T]he unauthorized entering of any inhabited dwelling, or any structure ... where a person is present, with the intent to commit a felony or any theft therein, if the offender,
>
> (1) Is armed with a dangerous weapon; or
>
> (2) After entering arms himself with a dangerous weapon; or
>
> (3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Aggravated burglary is a specific intent crime. *State v. Welch*, No. 2009 KA 1609, 2010 WL 532386, at *5 (La .App. 1st Cir. Feb. 12, 2010); *State v. Brandenburg*, 949 So. 2d 625, 633 (La. App. 3rd Cir. 2007).

In Louisiana, the offense of being a previously convicted felon in possession of a weapon is defined as follows: "It is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances law which is a felony…to possess a firearm or carry a concealed weapon." La. Rev. Stat. § 14:95.1(A). To sustain a conviction for possession of a firearm by a convicted felon, the State had to prove the following elements of the offense: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime. *State v. Caffrey*, 15 So. 3d 198, 202 (La. App. 5th Cir. 2009); *State v. Ray*, 961 So. 2d 607, 610 (La. App. 2d Cir. 2007); *State v. Robert*, 956 So. 2d 750, 754 (La. App. 2d Cir. 2007).

Specific intent is not necessary for a conviction as a previously convicted felon in possession of a firearm. Instead, general intent is all that is required, and it may be proved through either the

actual or constructive possession of a firearm. *State v. Law*, 46 So. 3d 764, 770 (La. App. 2d Cir. 2010); *State v. Jamerson*, 1 So. 3d 827, 831 (La. App. 2d Cir. 2009). General intent may be inferred from the circumstance of the transaction and proved by direct or circumstantial evidence. *State v. Brokenberry*, 942 So. 2d 1209, 1213 (La. App. 2d Cir. 2006); *State v. Culp*, 17 So. 3d 429, 435 (La. App. 2d Cir. 2009). Determination of whether the requisite intent is present in a criminal case is for the trier of fact. *State v. Brown*, 92 So. 3d 579, 585 (La. App. 2d Cir. 2012) (citing *State v. Huizar*, 414 So. 2d 741 (La. 1982)).

Sparkman does not dispute that he shot the victims. The focus of Sparkman's challenge to the sufficiency of the evidence is and has been that the State failed to disprove that he acted in self-defense in shooting the victims. He further claims that the State failed to prove beyond a reasonable doubt that he committed an aggravated burglary or possessed a firearm.

Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. Rev. Stat. § 14:20(A)(1); *see State v. Chapman*, 643 So. 2d 394 (La. App. 3d Cir. 1994). In addition, in a non-homicide situation, Louisiana law provides that a claim of self-defense applies when the force used was reasonable under the circumstances and was apparently necessary to prevent harm to the accused. *See* La. Rev. Stat. § 14:19(A); *State v. Taylor*, 721 So. 2d 929, 931 (La. App. 1st Cir.1998); *State v. Navarre*, 498 So. 2d 249, 252–53 (La. App. 1st Cir. 1986). Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether or not the defendant had a reasonable belief that deadly force was necessary to avoid the danger. *State v. King*, 88 So. 3d 1147, 1153 (La. App. 5th Cir. 2012); *State v. Jenkins*, 750 So. 2d 366, 376 (La. App. 4th Cir. 1999); *State v. Dozier*, 553 So. 2d 911, 913 (La. App. 4th Cir. 1989). Self-defense is <u>not</u> available to those who are in the act of committing a

crime or otherwise act as the aggressor. *State v. Rice*, 626 So. 2d 515, 525 (La. App. 3d Cir. 1993). Under Louisiana's aggressor doctrine, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La. Rev. Stat. § 14:21; *Dozier*, 553 So.2d at 913.

The State had the burden of proving that Sparkman did not act in self-defense. The standard of review on federal habeas review under *Jackson* is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Lilly*, 552 So. 2d 1036, 1039 (La. App. 1st Cir. 1989). With respect to the attempted murder charge, Sparkman had the burden of proof by a preponderance of the evidence that his actions in shooting Smith were in self-defense.[31] *State v. Havies*, 215 So.3d 457, 463 (La. App. 5th Cir. 2017); *State v. Howard*, 182 So.3d 360, 363 (La. App. 5th Cir. 2015).

As the state courts repeatedly concluded, however, it was wholly reasonable for the jury to find that Sparkman did not act in self-defense when he shot Brown and Smith. Sparkman did not offer any evidence or testimony to establish his claim of self-defense. In fact, no defense witnesses were called. Instead, Sparkman's counsel relied on Sparkman's recorded statements that the prosecution introduced into evidence at trial. In those statements, Sparkman claimed that Smith and Brown, the latter who was armed, attacked him. Sparkman claimed that he wrestled Brown's gun away from him and shot

---

[31]The Louisiana courts have not resolved with certainty the exact burden to be met by defendants, or on rebuttal by the State, as to self-defense in a non-homicide case. *State v. McKinney*, No. 2014 KA 1322, 2015 WL 996348, at *2 (La. App. 1st Cir. March 6, 2015) ("Louisiana law is unclear as to who has the burden of proving self-defense in a nonhomicide case."). The majority view appears to be that a defendant in a non-homicide case has the burden of proof by a preponderance of the evidence that his actions were in self-defense. *State v. Graham*, No. 2013–KA–1893, 2014 WL 1778375, at *6 & n. 1 (La. App. 1st Cir. May 2, 2014); *State v. Jackson*, No. 51,575–KA, 2017 WL 4273705, at *2 (La. App. 2d Cir. Sept. 27, 2017); *State v. Anderson*, 721 So.2d 1006, 1010 (La. App. 3d Cir. 1998); *State v. Barnes*, 491 So. 2d 42, 47 (La. App. 5th Cir. 1986).

him to protect himself.  He further claimed that he shot Smith before he could retrieve a gun from the kitchen.  The testimony and evidence presented by the prosecution, however, conflicted with Sparkman's claims that Brown and Smith were armed and attacked him and that he acted in self-defense.

The jury heard testimony from Norman and Smith that neither victim had a weapon and no guns were found on the scene.[32]  Smith testified that Sparkman had a gun when he entered the apartment and that Brown and Sparkman struggled over the gun.[33]  Smith testified that Sparkman shot Brown in the head.[34]  Smith, realizing that he did not have any weapon for protection, kneeled on the floor and put his hands up and told Sparkman, "Son, you ain't got to kill me.  Son, you can take everything," but Sparkman shot him despite his pleas.[35]  While Smith "played dead," Sparkman searched the apartment, including the oven and the closet, and then left.[36]  Smith testified that he believed Sparkman was jealous and came to the apartment with the intention of killing Brown.[37]

Norman testified that, upon returning from Brother's Food Mart, she called Brown to tell him she saw someone outside the apartment door.[38]  Norman saw Brown, who was unarmed, open the door.[39]  Sparkman came running at Brown with a gun drawn and the two men struggled.[40]  Sparkman

---

[32]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 17, 20, 30, 33, 50, 60, (Smith), pp. 93, 103 (Deputy Perque), pp. 109-110, 122-24, 142, 147-48, 153 (Norman), 5/9/13.

[33]*Id.*, at pp. 16-17, 33-34.

[34]*Id.*, at pp. 17, 34, 60.

[35]*Id.*, at pp. 17, 20, 30, 33, 34, 50, 60.

[36]*Id.*, at pp. 17-18, 20, 35-36, 59.

[37]*Id.*, at pp. 57-58.

[38]*Id.*, at pp. 107, 109, 136-37.

[39]*Id.*, at pp. 109-110.

[40]*Id.*, at pp. 111, 138.

shot Brown.[41]  After Sparkman shot Brown, Shelby, who was carrying a gun, chased after her as she

fled the parking lot. [42]

The jury also heard from Guillot who testified that Sparkman told him that he and two of his

friends were captured on surveillance video footage shortly before the shootings.[43]  According to

Guillot, Sparkman, who was armed, pushed his way in through the door of Brown's apartment.[44]  A

struggle ensued and Sparkman shot Brown.[45]  Guillot further testified that Sparkman told him that

Smith put his hands up, but that Sparkman shot him through his hands striking him in the head.[46]

The evidence of these witnesses more than reasonably demonstrated that Sparkman was the

aggressor and/or at no time faced any real or apparent danger posed by Brown or Smith to justify his

actions that night.  In addition, a finding that Sparkman acted in self-defense, without specific intent

to kill or inflict great bodily harm, is not supported by the evidence of Sparkman's actions after the

shootings.  Instead of remaining in the area to explain the situation to police, Sparkman searched the

apartment before fleeing the scene and disposing of the gun and his clothing.[47]  The jury reasonably

found Sparkman's self-defense claim lacking in weight and/or credibility.

While Sparkman argues that the testimony of Smith, Norman, and Guillot was not credible, the

jury obviously found their testimony and statements to be credible.  *Jackson* limits this Court's review

to the evidence before the trier of fact and does not allow the Court to reassess the weight and credibility

of the evidence.  *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder).

---

[41]*Id.*, at pp. 137-38.

[42]*Id.*, at pp. 111-114, 119.

[43]*Id.*, at p. 65.

[44]*Id.*, at pp. 65, 74.

[45]*Id.*, at pp. 65, 74.

[46]*Id.*, at p. 65.

[47]*Id.*, at. pp. 17, 20, 35 (Smith), pp. 65, 74-75 (Guillot).

Specifically, the determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). The jury's resolve was reasonable and supported by the evidence and testimony.

A rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily find beyond a reasonable doubt that the crimes were not committed in self-defense. As the evidence indicated, and as was resolved by the state courts, Sparkman, who was a convicted felon, had possession of the weapon, shot Brown in the head and then shot Smith, who was kneeling and begging for his life. After searching the apartment, Sparkman then fled. He did not stay at the scene to speak with police, and he did not contact the police to report the matter. A reasonable factfinder could also easily find that the evidence was more than sufficient to establish that Sparkman armed himself with a gun and entered the apartment with the intent to take something of value. There was more than sufficient evidence to support the verdict of guilty of second degree murder, attempted second degree murder, aggravated burglary, and felon in possession of a firearm.

The state courts' rejection of Sparkman's insufficient evidence/self-defense claim does not present an unreasonable application of Supreme Court precedent to the facts of this case. Sparkman is not entitled to relief on this claim.

## VII.  <u>Denial of Mistrial (Claim No. 2)</u>

Sparkman's petition alleges that the Trial Court erred in denying his motion for mistrial when Norman referred to having passed a polygraph examination during her testimony. During

cross-examination, Shelby's counsel questioned Norman as to whether Brown told her to take his

gun as she was leaving for the store.[48]  Norman denied that Brown told her to take a gun and

testified, "I took a lie detector.  I took a lie detector test about – the detectives asked me that

question too."[49]  At sidebar, Shelby's counsel moved for a mistrial.[50]  The Trial Court remarked

that it did not hear Norman mention a polygraph, denied the motion for mistrial, and offered to

instruct the jury not to consider the testimony regarding the polygraph as it was neither evidence

nor admissible.[51]  Shelby's counsel expressed concern that such an instruction would draw the

jury's attention to the comment and stated, "I don't think you need to tell them because they may

not have heard it.  It wasn't responsive to my question also."[52]

　　　　When this issue was raised on direct appeal, the Fifth Circuit found no error by the state

Trial Court in denying the motion for mistrial under Louisiana law.  The Fifth Circuit resolved that

there was no reasonable possibility that Norman's reference to the polygraph test might have

contributed to the conviction and that Trial Court did not abuse its discretion in denying the motion

for mistrial based on the permissive grounds listed in La. Code Crim. P. art. 771.  This was the last

reasoned opinion on the issue.

---

[48]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 150, 5/9/13.

[49]*Id.*, at pp. 150-51.

[50]*Id*., at p. 151.

[51]*Id.*, at pp. 151-52.

[52]*Id.*  When Shelby's counsel resumed his cross-examination of Norman, Norman stated, "He never said take the gun.  When the detectives kept asking me about the same thing you asked me about, they thought I was lying and I told them, I asked them, 'Can I take a lie detector test,' and I passed it.  But I don't recall him—".  *Id.*  The prosecutor then instructed the witness and there was no further mention of a polygraph.  *Id.*  The Fifth Circuit found that defense counsel did not object to this reference and, thus, only issues involving the first reference were preserved for review. *Sparkman*, 136 So. 3d at 109; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 13-KA-640, p. 17, 2/12/14.

As an initial matter, Sparkman's arguments that the Trial Court erred in failing to grant a mistrial under state law do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review.  *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)). Federal habeas corpus review is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).   "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue*, 131 F.3d at 506 (a disagreement as to state law is not cognizable on federal habeas review).  Any alleged impropriety based on state law does not warrant federal habeas review or relief.

Instead, the state courts' denial of the motion for a mistrial justifies federal habeas corpus relief only if it was "error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *See Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)).  In order to obtain federal habeas relief,

Sparkman must show that the state trial court's ruling had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abraham*son, 507 U.S. 619, 623 (1993). Sparkman must show that "there is more than a mere reasonable possibility that [the ruling] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000). Thus, the Court must determine whether the denial of relief by the state courts was contrary to, or an unreasonable application of, federal law.

The record demonstrates that the state courts' denial of Sparkman's motion did not constitute a denial of his due process rights, and that the denial had neither a substantial nor an injurious effect in determining the jury's verdict. Norman's fleeting reference to the polygraph was nonresponsive and unanticipated. The remark was not highlighted by further questioning or during argument. Due to his concern of drawing attention to the comment, defense counsel declined a curative instruction. Furthermore, there is a question whether the jury even heard the comment. The Trial Court stated that it did not hear the comment and Shelby's counsel conceded that the jury may not have heard it.[53] These considerations, coupled with the overwhelming evidence of guilt, including Sparkman's admission that he shot both victims, establish that Sparkman has not shown that his trial was made fundamentally unfair by Norman's fleeting reference to the polygraph. *See*, *e.g.*, *United States v. Jackson*, 193 F. 3d 516, 1999 WL 706084, at *4 (5th Cir. Aug. 17, 1999) (per curiam) (Table, Text in Westlaw) (denial of mistrial based on

---

[53] *Id.*, at pp. 151-52.

witness's reference to defendant's prior incarceration was not an abuse of discretion where it was unclear whether jury heard the nonresponsive stray remark and in light of the other evidence); *Talley v. Cain*, Civ. Action No. 08-3542, 2009 WL 916331, at *15 (E.D. La. April 6, 2009) (no basis for finding that witness's comment related to seizure of firearm that had been ordered suppressed violated petitioner's right to fair trial).

Sparkman has not established a due process violation resulting from the reference to the polygraph test or denial of the motion for mistrial. The denial of relief on this issue by the state courts was not contrary to or an unreasonable application of Supreme Court law. Sparkman is not entitled to federal habeas corpus relief.

## VIII.   <u>Effective Assistance of Counsel (Claim No. 6)</u>

Sparkman alleges that he received ineffective assistance of counsel. He claims his trial counsel failed to object to racial discrimination during jury selection in violation of *Batson*. He also alleges that he received ineffective assistance of counsel on appeal when his appointed counsel failed to assert a claim related to a stipulation regarding Sparkman's prior conviction as well as a claim of ineffective assistance of counsel related to jury selection.

Sparkman asserted these arguments in his state application for post-conviction relief. Upon its review pursuant to the standards set forth in *Strickland*, 466 U.S. at 668 and related state case law, the Trial Court found that there was no evidence of a valid *Batson* violation and Sparkman's claims to be without merit.[54] The Trial Court further found that appellate counsel was not deficient in her representation of Sparkman.[55] The Louisiana Fifth Circuit found no error in the Trial Court's

---

[54]St. Rec. Vol.6 of 7, Trial Court Order, p. 2, 7/17/15.

[55]*Id.*

ruling.[56]  In the last reasoned opinion, the Louisiana Supreme Court concluded that Sparkman failed to demonstrate that he received ineffective assistance of counsel under the *Strickland* standards.[57]

### A.    Standards of Review under *Strickland*

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's

---

[56]St. Rec. Vol. 6 of 7, 5th Cir. Order, 15-KH-513, p. 2, 8/20/15.

[57]*State ex rel. Sparkman*, 202 So. 3d 489-90; St. Rec. Vol. 6 of 7, La. S. Ct. Order, 15-KH-1726, 10/17/16.

actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."

*Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

### B.    Counsel at the State Trial Level

Sparkman argues that the prosecution impermissibly used peremptory challenges to exclude African-Americans from the jury venire and that his trial counsel failed to object to the State's misuse of peremptory challenges. He argues that the prosecution struck four African-Americans.

In *Batson*, the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. *Batson*, 476 U.S. at 89. In evaluating whether a petitioner has established a *Batson* violation, a three-step analysis is employed, with the first step requiring a petitioner to make a prima facie showing that a peremptory challenge has been exercised on the basis of race or gender. *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

In the instant matter, Sparkman has not demonstrated a prima facie case of racial discrimination. While he claims that the State struck four African-Americans from the venire, he provides no evidence demonstrating the race of the excluded jurors or any evidence to support his allegation that the State misused its peremptory strikes. Nor does he offer any evidence of the racial composition of the venire or the racial composition of the final trial jury. He offers no reasons for his failure to do so here or in the state courts. While there is no transcript of the voir

dire from his trial, given there was no *Batson* objection made during jury selection, the transcript would not assist in analyzing Sparkman's claim as it would not have revealed the race of the prospective jurors.

Sparkman has failed to provide even minimal evidence in support of his claim, either here or in the state courts. Accordingly, Sparkman has clearly failed to satisfy his burden of proof to show that his counsel failed to make what would have been a meritorious objection which would entitle him to relief under *Strickland*. *See Turner v. Epps*, No. 07-77, 2010 WL 653880, at *7 (N.D. Miss. Feb 19, 2010) ("As Petitioner cannot establish that any minority venire person was struck by the State, much less that they were struck with a discriminatory intent, he cannot establish ineffective assistance of counsel on this conclusory argument"); *Eastridge v. United States*, 372 F. Supp. 2d 26, 61 (D.D.C. May 26, 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire."). Therefore, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application, of *Strickland*. Sparkman is not entitled to relief on this claim.

## C.    <u>Assistance of Appellate Counsel</u>

Sparkman appears to claim that his trial counsel did not stipulate that Sparkman was convicted of attempted armed robbery and that his appellate counsel was ineffective for failing to assign as error for appellate review the clerk's advisement to the jury that he had been so convicted.[58] He also claims that his appellate counsel should have raised on appeal a claim regarding trial counsel's ineffective assistance in failing to raise a *Batson* jury selection.

---

[58]It is difficult to discern Sparkman's claim related to the stipulation from his habeas petition. However, in his traverse, Sparkman, in further addressing his claim, specifically claimed that his trial counsel did not sign or

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).  In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [defendant]." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).  When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhamel*, 955 F.2d at 967.  However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)).  Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." *Green v. Johnson*, 160 F.3d 1029, 1037 (1998).  Courts give great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues...." *Jones v. Barnes*, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit. *Id.* at 751–2.  Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue or issues actually presented on appeal. *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753.  [I]t is still

---

stipulate that petitioner was convicted of attempted armed robbery, but rather the prosecution requested that the Trial Court have the clerk inform the jury of the prior conviction. St. Rec. Vol. 6 of 7, Petitioner's Traverse to the State's Response to Post-Conviction Relief, pp. 4-5, 7/27/15 (dated 7/17/15).

possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith*, 528 U.S. at 288; *see also United States v. Tucker*, 434 F. App'x 355, 362 (5th Cir. 2011) (per curiam) ("The Supreme Court has recognized 'the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" (quoting *Jones*, 463 U.S. at 752)).  To reiterate, the issues appellate counsel failed to assign must have been "clearly stronger" than those issues actually presented on appeal. *See, e.g.*, *Diaz*, 228 F. App'x at 427; *see also Smith*, 528 U.S. at 288.

As determined by the state courts, Sparkman has failed to establish that either of his claims would have been successful on appeal.  For example, contrary to his claim that his trial counsel did not stipulate that Sparkman had been convicted of attempted armed robbery, the record includes a written stipulation signed by counsel.[59]  The stipulation was received into evidence without objection.[60]  The prosecution called its first witness, but before beginning the examination, requested the stipulation be read to the jury.  Sparkman's trial counsel objected and stated, "my objection is that it appears that the Stipulation is going to be related to this witness."[61]  The Trial Court instructed the jury that the stipulation did not relate to the witness.[62]  The clerk then read the stipulation to the jury without objection.[63]

As indicated, petitioner's trial counsel agreed to the stipulation and did not object to its admission into evidence or to the reading of the stipulation once the Trial Court explained that the

---

[59]St. Rec. Vol. 1 of 7, Stipulation, 5/8/13.

[60]St. Rec. Vol. 1 of 7, Trial Transcript, p. 9, 5/8/13.

[61]*Id.*

[62]*Id.*, at pp. 11-12.

[63]*Id.*, at p. 12.

stipulation did not relate to the witness on the stand. An objection would have been necessary to preserve error for review on direct appeal. La. Code Crim. P. art. 841 ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."). Without the claim being properly preserved for review on direct appeal, appellate counsel was not in a position to raise the claim on appeal. Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue." *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001); *accord Weatherspoon v. Cockrell*, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial. Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice. Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted)), *report and recommendation adopted*, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); *Arceneaux v. Cain*, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim."); *Taylor v. Holliday*, Civ. Action No. 06–4118, 2008 WL 5146505, at *8 (E.D. La. Dec.4, 2008) (petitioner failed to demonstrate ineffective assistance of appellate counsel when issue was not preserved for appeal).

As to appellate counsel's failure to raise an issue of ineffective assistance of trial counsel, as discussed herein, Sparkman's ineffective assistance of trial counsel claim in failing to raise a *Batson* issue is without merit under *Strickland*. This was the conclusion reached by the Louisiana

courts on post-conviction review and by this Court here.  He cannot show that the outcome of his appeal would have been any different had counsel raised the claim on direct appeal.

In addition, it is a well-settled that Louisiana laws deems that claims of ineffective assistance of trial counsel are more properly raised in an application for post-conviction relief in the district court rather than on direct appeal.  *State v. Watson*, 817 So. 2d 81, 84 (La. 2002); *State v. Truitt*, 500 So. 2d 355, 359 (La. 1987); *see also State v. Smothers*, 836 So. 2d 559 (La. App. 5th Cir.2002) (refusing to consider ineffective assistance of counsel claim on direct appeal); *State v. Hall*, 843 So. 2d 488 (La. App. 4th Cir.2003) (same); *State v. Griffin*, 839 So. 2d 1148 (La. App. 3d Cir.2003) (same).  As such, Sparkman's appellate counsel did not act deficiently in failing to raise the ineffective assistance of trial counsel claim on appeal.  Even if her failure to do so could be considered deficient, Sparkman was not prejudiced by the failure since the state appellate court likely would have deferred the claim to post-conviction review, which Sparkman later pursued.

Sparkman has not shown that his appellate counsel failed to raise a nonfrivolous or potentially meritorious issue on direct appeal.  He has not demonstrated any deficient performance on the part of his appellate counsel or shown any prejudice caused by counsel's failure to assert these meritless and unsupportable claims in his appeal.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.  Sparkman is not entitled to relief on this issue.

## IX.  __Improper Bolstering of Guillot's Testimony (Claim No. 8)__

Sparkman's final claim is that the prosecutor improperly bolstered the credibility of Guillot.  Sparkman also appears to argue that the prosecution failed to disclose its agreement with Guillot in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that Guillot's trial testimony

was false and the State solicited misleading testimony and suborned the victim's perjury in violation of *Napue v. Illinois*, 360 U.S. 264 (1959), by allowing him to testify in this way.

Sparkman raised this claim in his application for post-conviction relief. The Trial Court, in finding that petitioner failed to support his claim legally or factually, explained, "petitioner does not establish any untruth, impropriety, or misleading testimony from this witness. The jury was fully aware the [sic] Timothy Guillot had many arrests and convictions and that he wanted to 'help himself' by testifying."[64] The Louisiana Fifth Circuit found no error in the ruling.[65] The Louisiana Supreme Court found the claim unsupported.[66]

To the extent Sparkman claims that some of the prosecution's questions on direct examination violated La. Code Crim. P. art. 607(B), which provides that "the credibility of a witness may not be supported unless it has been attacked," he has failed to state a cognizable habeas claim. This federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do <u>not</u> review questions of state law. *Estelle*, 502 U.S. at 67-68;

---

[64]St. Rec. Vol. 6 of 7, Trial Court Order, p. 3, 7/17/15.

[65]St. Rec. Vol. 6 of 7, 5th Cir. Order, 15-KH-513, p. 3, 8/25/15.

[66]*State ex rel. Sparkman*, 202 So. 3d at 490; St. Rec. Vol. 6 of 7, La. S. Ct. Order, 15-KH-1726, 10/17/16.

*Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

Sparkman's *Brady* and *Napue* arguments, which are related and intertwined, do not support federal habeas corpus relief.  Both a *Napue* claim of use of perjured testimony and a *Brady* claim alleging prosecutorial withholding of exculpatory evidence present mixed questions of law and fact.  *United States v. Stanford*, 823 F.3d 814, 838 (5th Cir.), *cert. denied*, 137 S.Ct. 453 (2016) (citing *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004)); *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012); *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing *United States v. Emuegbunam*, 268 F.3d 377, 403-04 (6th Cir. 2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997); *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989)).  Thus, the question before this Court as to both of these arguments is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

As to Sparkman's *Napue* argument, he appears to contend that the State knowingly allowed Guillot to testify falsely in violation of his due process rights.  This claim is entirely conclusory. The State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); *Faulder v. Johnson*, 81 F. 3d 515, 519 (5th Cir. 1996).  To obtain relief, however, the petitioner must show that (1) the testimony was <u>actually false</u>, (2) the <u>State knew</u> it was false, and (3) the testimony was <u>material</u>. *Duncan v. Cockrell*, 70 F. App'x 741, 744 (5th Cir. 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491,

497 (5th Cir. 1993). False evidence is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. *Id.* (citing *Nobles*, 127 F.3d at 415).

Sparkman has not established that any particular statement made by Guillot actually was false. His argument is based on his mere conclusion that the testimony was false because he disagrees with Guillot's testimony and contends that it conflicted with other testimony. The mere existence of a conflict in testimony and evidence does not make it false or perjured. *See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004) ("Wall has not established that McDowell's testimony was actually false. He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.' "). The evidence in this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's function to resolve.

Sparkman's *Brady* claim appears to be that the prosecution failed to disclose its agreement with Guillot. In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to disclose this kind of evidence exists even though there has been no request by the defendant. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)); *Hall v. Thaler*, 504 F. App'x 269, 273 (5th Cir. 2012) (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). The prosecution's duty to disclose includes both exculpatory and impeachment evidence. *Strickler,* 527 U.S. at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)); *United States v. Valas*, 822 F.3d 228, 236-37 (5th Cir. 2016). *Brady* claims involve "the discovery, after trial of information which had been

known to the prosecution but unknown to the defense." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *Agurs*, 427 U.S. at 103); *accord Reed v. Stephens*, 739 F.3d 753, 783 (5th Cir. 2014).  To prove a *Brady* violation, a defendant must establish that the evidence is favorable to the accused as exculpatory or impeachment, that <u>the evidence was suppressed by the State</u>, and that prejudice resulted from the non-disclosure. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (*citing Strickler*, 527 U.S. at 281-82); *Reed*, 739 F.3d at 782.

Sparkman has identified no evidence or withheld evidence related to Guillot's testimony. His claim that the State did not disclose its agreement with Guillot is belied by the record.  The prosecution questioned Guillot about his motive for testifying.[67]  Guillot testified that he had more than ten felony convictions and that the prosecutor agreed to file a substantial assistance motion and recommend that he receive a lesser sentence in exchange for Guillot's truthful testimony.[68]

Sparkman has fallen far short of establishing that Guillot's testimony was false, that the State withheld evidence, or that the State engaged in prosecutorial misconduct to deny him a fair trial.  He has not shown that the denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

## X.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Sparkman's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

---

[67]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 63-64, 66-69, 5/9/13.

[68]*Id.*, at pp. 64, 66-70.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[69]

New Orleans, Louisiana, this 1st   day of December, 2017

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[69]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.